No appearance for the People.

THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* MERRILL J. FOWLER, Defendant-Appellant.

(No. 72-318;

Second District—April 9, 1974.

Michael Cohen, of Chicago, for appellant.

Gerry L. Dondanville, State's Attorney, of Geneva (Clarence Wittenstrom, Assistant State's Attorney, of counsel), for the People.

Mr. JUSTICE GUILD delivered the opinion of the court:

The defendant herein waived indictment and was charged by an information for the sale of a controlled substance, amphetamine, to a special agent of the IBI. On May 22, 1972, the defendant waived a jury and on June 7, 1972, he was tried in a bench trial in the circuit court of Kane County. He testified in his own behalf; was found guilty by the court; applied for probation and was placed on probation for a period of 4 years.

In this appeal the defendant raises two issues: (1) The evidence was insufficient to convict him; and (2) the trial court erred in proceeding to a bench trial without a knowing, understanding, and intelligent jury waiver from the defendant. We will consider the second contention first.

As indicated above, the defendant appeared in court on May 22 together with his privately retained counsel. At that time the State's Attorney stated "I am presenting to the court at this time a waiver of trial by jury which has been signed by the defendant and witnessed by his attorney, Mr. Rogers. I ask that the court inquire and have him acknowledge the same." The court then proceeded to inquire of the defendant and his counsel as to the jury waiver. The court asked defendant's counsel if his name as a witness was on the waiver, he asked the defendant if his name was on the waiver, and specifically asked the defendant if he was waiving his right to a trial by jury and if this was his voluntary act. The defendant replied in the affirmative, in open court. The matter was then set for hearing on June 6, 1972.

Counsel for the defendant has cited a number of cases relative to the waiver of jury. No useful purpose would be served in discussing them in detail, but in this court's opinion they are not applicable. Indicative of the general tenor of the cases cited by the defendant is *People v. Baker*

(1970), 126 Ill.App.2d 1, 262 N.E.2d 7. In *Baker* the court stated that no precise formula could be used for determining whether a defendant knowingly and understandingly waived his right to a trial by jury. Further, in *Baker*, the waiver of the jury consisted merely of the public defender, who had just been appointed for defendant, stating to the court, "\* \* \* not guilty, jury waiver." The court held in *Baker* that where there was no showing of the right to trial by jury the waiver was not knowingly and understandingly made. In a supplemental opinion in *Baker* the court held that *People v. Sailor*, 43 Ill.2d 256, 253 N.E.2d 397, was not applicable to the facts in the case before it.

Where the record is silent as to the waiver of jury in any fashion the courts have held that a waiver was improperly made. See *People v. McKinney* (1970), 126 Ill.App.2d 339, 261 N.E.2d 797, where the waiver was made by counsel not in the presence of the accused; *People v. Boyd* (1972), 5 Ill.App.3d 980, 284 N.E.2d 699, factually similar to *Baker*; *People v. Brownlow* (1969), 114 Ill.App.2d 458, 252 N.E.2d 685, where the court held defendant's silence was not sufficient to constitute a waiver; *People v. McGraw* (1969), 115 Ill.App.2d 444, 253 N.E.2d 518; *People v. Rosen* (1970), 128 Ill.App.2d 82, 261 N.E.2d 488, where the court again said that a waiver of jury may not be presumed from a silent record.

However, in *People v. Sailor* (1969), 43 Ill.2d 256, 260, 253 N.E.2d 397, the supreme court set forth the law somewhat succinctly relative to a waiver by defendant's counsel in the presence of the defendant, stating:

"\* \* \* The record reveals that defendant's counsel, in her presence and without objection on her part, expressly advised the court that the plea was 'not guilty' and that a jury was waived. An accused ordinarily speaks and acts through his attorney, who stands in the role of agent, and defendant, by permitting her attorney, in her presence and without objection, to waive her right to a jury trial is deemed to have acquiesced in, and to be bound by, his action."

Since the decision in *Sailor* there have been numerous cases on the application of the principles therein enunciated. *People v. Lewis* (1973), 13 Ill.App.3d 688; *People v. Closson* (1973), 13 Ill.App.3d 878; *People v. Gray* (1973), 14 Ill.App.3d 1022, 304 N.E.2d 111.

Defendant has cited *People v. Spates* (1971), 132 Ill.App.2d 902, 270 N.E.2d 848, and *People v. Gaston* (1971), 132 Ill.App.2d 900, 270 N.E.2d 846. Neither of these cases are applicable to the facts before us as the only evidence therein was solely a written jury waiver, with no statement as to such waiver either by or in the presence of the defendant.

As indicated above, the State's Attorney asked the judge to inquire if

the defendant wished to waive a jury. The court thereupon inquired of the defendant and his counsel as to whether or not they had signed the jury waiver and if it had been signed voluntarily by the defendant, to which the defendant replied in the affirmative.

■■ We therefore find that the defendant knowingly and intelligently, both personally and through his privately retained counsel, waived the jury herein.

■■■ We turn then to the first contention of the defendant, that the evidence was not sufficient to prove him guilty beyond a reasonable doubt. Defendant asserts that actually he is charged with being an aider and abettor and as such a conviction may not stand, based on mere presence at the scene of a crime. The defendant was properly charged as a principal even though he was only an accessory to the crime. (*People v. Heuton* (1971), 2 Ill.App.3d 427, 276 N.E.2d 8.) In *People v. Thicksten* (1958), 14 Ill.2d 132, 150 N.E.2d 813, where the same argument was raised, the court there said at page 134:

> "* * * Plaintiff in error argues there is no direct evidence in the record that he did any affirmative act in connection with the crime or joined in a common design to commit it. The contention cannot be sustained. There is more shown by this evidence than mere presence at the scene of the robbery and a negative acquiescence therein. Plaintiff in error was closely associated with Bevard immediately before and after the crime, as well as at the time it was committed.
>
> * * * While mere presence or negative acquiescence is not enough to constitute a person a principal, circumstances may show there is a common design to do an unlawful act to which all assent. In such cases it is not necessary that each one shall take an active part in the commission of the crime. Whatever is done in furtherance of the design is the act of all, and each is guilty of the crime."

In *People v. Washington* (1962), 26 Ill.2d 207, 186 N.E.2d 259, the defendant therein contended that his mere presence and negative acquiescence was not sufficient to support a finding that he aided and abetted or assisted in the robbery therein. The court stated at page 209:

> "* * * While it is true that mere presence or negative acquiescence is not enough to constitute a person a principal, one may aid and abet without actively participating in the overt act and if the proof shows that a person was present at the commission of the crime without disapproving or opposing it, it is competent for the trier of fact to consider this conduct in connection with other circumstances and thereby reach a conclusion that such person assented to the commission of the crime, lent to it his

countenance and approval and was thereby aiding and abetting the crime. [Citations.]"

See *People v. Barnes* (1971), 2 Ill.App.3d 461, 464, 276 N.E.2d 509.

In the case before us we find that there was more than mere presence and silent acquiescence on the part of the defendant. It is undisputed that on the night in question the defendant drove Phillip Burch to Fulton Street in Elgin where they met with the special agents of the IBI. After Agent Magnusen talked to Burch the defendant testified that he drove Burch to the Frontier Lanes Bowling Alley where he left him for an hour or an hour and a half; that he then picked him up and took him back to the Fulton street area where Burch again met with Agent Magnusen and Agent Kidd. Defendant denies having any part or knowing what transpired at either time. However, Agent Magnusen testified that at the first meeting on Fulton street the defendant was the driver of the car and was seated behind the wheel while Burch was sitting next to him. After the conversation relative to the purchase of the amphetamine tablets the defendant drove Burch from the scene. Another agent of the IBI, Joseph Grady, followed the defendant and Burch and testified that they left the Fulton Street area at 8:30 and drove to 207 North Porter Street in Elgin where the driver exited the vehicle and went to the front door. While the agent was unable to identify the defendant because of the darkness, the man who got out of the car and went into the premises did not limp. It was thus obvious that the party going into that address was not Burch who limped and used a cane. The agent testified that a few minutes later the driver of the car reentered the vehicle and drove to 426 North Addison where again the driver entered the premises walking rapidly, without a limp, where he stayed for approximately 20 minutes. He then reentered the vehicle and at a few minutes after 9 the defendant and Burch drove back to the Fulton Street area where the sale of amphetamine was consummated. The defendant's testimony relative to his activities from 7 until 9:15 is somewhat contradictory and confusing. He testified that he went to Frontier Lanes and left Burch, which is not substantiated by the agent's testimony, and upon cross examination admitted that he had gone to the Porter Street address and the Addison Street address; that at the 207 North Porter address he talked to one Jim Huske about going fishing; he admitted upon cross-examination that at 426 N. Addison he talked to a girl by the name of Debbie Wishon. Agent Magnusen testified that when the defendant and Burch returned to the Fulton Street address they only had 750 tablets and Magnusen stated they wanted 1000 for $100. The defendant Fowler, seated in the driver's seat turned his head, and stated "they were 15 milligram tablets, and real good."

The evidence in the case before us consists of more than mere pres-

ence and negative acquiescence. Burch, who was convicted in another trial, was unable to drive a motor vehicle. Two of the IBI agents testified as to the defendant's presence in the vehicle at the time the offer to buy was made. Another agent followed the defendant and Burch when they left the Fulton Street address, went to two addresses, and then returned to the Fulton Street area. The two agents further testified that the defendant was present when the money was paid for the amphetamine tablets and, as indicated above, the defendant took part in the conversation.

The trial court in finding the defendant guilty observed "the evidence offered by the defendant was largely, in my mind, not very worthy of belief."

In a bench trial it is the function and responsibility of the trial Judge to determine the credibility of witnesses and the weight to be given their testimony. Unless the evidence is so unsatisfactory as to raise a reasonable doubt of the defendant's guilt, the reviewing court will not substitute its judgment for that of the trial court. *People v. Pagan* (1972), 52 Ill.2d 525, 534, 288 N.E.2d 102.

Judgment affirmed.

T. MORAN, P. J., and SEIDENFELD, J., concur.